**In re PENN CENTRAL TRANSPORTA-
TION COMPANY, Debtor.**
**In re Discontinuance of INTERCITY
PASSENGER SERVICE.**
**No. 70–347.**

United States District Court,
E. D. Pennsylvania.

April 30, 1971.

Edwin P. Rome, Blank, Rome, Klaus & Comisky, Robert W. Blanchette, Philadelphia, Pa., for Trustees, Penn Central Transp. Co.

W. Bourne Ruthrauff, Tate & Ervin, Philadelphia, Pa., for New York, New Haven and Hartford.

John F. Wilson, III, Dechert, Price & Rhoads, Philadelphia Pa., for Penn Central Co.

Nochem S. Winnet, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for First National City Bank of N. Y.

Morris Cheston, Jr., Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., for Morgan Guaranty Trust Co.

Herbert Smolen, Asst. City Solicitor, Philadelphia, Pa., for City of Philadelphia.

Gordon P. MacDougall, Washington, D. C., Special Asst. Atty. Gen., for Commonwealth of Pennsylvania. John C. McTiernan, Albany, N. Y., for Commissioner of Transp. of the State of New York.

Walter J. Myskowski, Albany, N. Y., for the Atty. Gen. of the State of New York.

Thomas P. Shearer, Pittsburgh, Pa., for United Transp. Union.

Geoffrey W. Zeh, Mulholland, Hickey & Lyman, Washington, D. C., for Congress of Railway Unions, Railway Labor Executives Ass'n.

Robert J. Bossolt, Deputy Atty. Gen., State of New Jersey, for New Jersey Dept. of Transp.

FULLAM, District Judge.

The Rail Passenger Service Act of 1970, P.L. 91–518, 45 U.S.C. § 501 et seq. (hereinafter referred to as "Amtrak Statute") directly affects only "intercity rail passenger service", defined therein (Section 102(5)) as follows:

> " 'Intercity rail passenger service' means all rail passenger service other than (A) commuter and other short-haul service in metropolitan and suburban areas, usually characterized by reduced fare, multiple ride and commutation tickets, and by morning and evening peak period operations; and (B) [auto-ferry service pursuant to existing contracts]."

Railroads which have entered into contracts with Amtrak pursuant to the Statute are relieved of their entire responsibility for intercity rail passenger service from and after May 1, 1971. Section 401(a) (1) of the Act provides in relevant part:

> "Upon its entering into a valid contract (including protective arrangements for employees), the railroad shall be relieved of all its responsibilities as a common carrier of passengers by rail in intercity rail passenger service under part I of the Interstate Commerce Act or any State or other law relating to the provisions of intercity passenger service; *Provided,* that any railroad discontinuing a train hereunder must give notice in accordance with the notice procedures contained in section 13a(1) of the Interstate Commerce Act."

In accordance with Order No. 238 herein, the Debtor has entered into a contract with Amtrak under the Statute. At an earlier stage, before this contract was executed, various interested parties and groups became apprehensive that the Debtor contemplated discontinuing some intercity trains even in the absence of such a contract, in violation of the Amtrak Statute. Litigation in other courts was commenced. Ultimately, after hearing, I entered Order No. 232, requiring that no such litigation commence or continue except in this Court or with the approval of this Court, and also directing the Trustees to apply to this Court for permission, upon five days' notice, before discontinuing any intercity trains, for whatever reason. Pursuant to this latter requirement, and having now entered into a contract with Amtrak, the Trustees have petitioned for leave to discontinue all intercity passenger service as of May 1, 1971. (Approximately 70% of the trains affected will be continued in operation by Amtrak under the contract; actual immediate cessation of service is proposed with respect to some 58 trains plus one feeder bus line which runs seven trips per day).

At the hearing, in various procedural ways,[1] the following legal and factual issues have been presented:

1. Was it proper for the Debtor to send out the 30-day notices required by § 13a(1) of the Interstate Commerce Act in advance of the signing of the Amtrak contract, in anticipation of its approval, so that the discontinuances could become effective on May 1, 1971?

2. If so, were the notices actually employed adequate?

3. (With respect to certain of the trains involved) are the trains in question "intercity" within the meaning of the Amtrak Statute?

4. What tribunal has jurisdiction to determine disputes as to whether a particular train is properly classified as "intercity" under the Statute (a) with respect to trains designated for operation by Amtrak, and (b) with

---

1. In addition to appearing at the hearing, in opposition to the Trustees' petition, certain objectors filed separate actions in this Court for injunctions (Civil Actions Nos. 71–1002 and 71–1003). All of the objectors, including the plaintiffs in those actions, will be referred to herein as "Respondents").

respect to trains not included in the Amtrak contract?

I

■ Insofar as presently pertinent, § 13a of the Interstate Commerce Act (49 U.S.C. § 13a) provides:

"(1) A carrier * * * may * * file with the Commission, and upon such filing shall mail to the Governor of each State in which such train or ferry is operated, and post in every station, depot or other facility served thereby, notice at least 30 days in advance of any such proposed discontinuance or change. The carrier or carriers filing such notice may discontinue or change any such operation or service pursuant to such notice except as otherwise ordered by the Commission pursuant to this paragraph, the laws or constitution of any State, or the decision or order of, or the pendency of any proceeding before, any court or State authority to the contrary notwithstanding."

The Commission has not "otherwise ordered"; indeed, by reason of the provisions of the Amtrak Statute, there would seem to be no legal basis upon which it could "otherwise order."[2] It is clear that the intercity rail service provided by Amtrak is to be in complete substitution for the intercity rail passenger service theretofore supplied by the contracting carrier. The limited jurisdiction and authority of the Commission with respect to such Amtrak service is set forth in detail in the Amtrak Statute.

■ The obvious purpose of the proviso in § 401(a) (1) requiring the 30-day notice under § 13a(1) of the Interstate Commerce Act is to enable interested governmental and other parties to make decisions with respect to possible requests for further services on a reimbursement basis, as provided in § 403(b) and (c).

It is undisputed that the notices in question (Exhibit T–1 at the hearing) were duly mailed and posted more than 30 days prior to May 1, 1971. The only complaint as to the sufficiency of the notice is that the notice listed for discontinuance all of the intercity passenger trains of the Debtor, rather than merely those trains which would not be operated by Amtrak; and that the notice provided the further information that a substantial number of the listed trains would in fact be operated by Amtrak, without specifying which ones.

[3] The Amtrak Statute, in its provisions relating to discontinuance of intercity passenger service by contracting carriers, draws no distinction between the two categories of trains. If it had been the Congressional intent that discontinuance notices were to be limited to those trains not taken over by Amtrak, the Statute would have so provided. Moreover, both factually and legally, all intercity passenger trains will be discontinued by the Debtor. The fact that the notice contained helpful additional information in order to prevent unjustified alarm on the part of the public does not invalidate the notices. I hold that there has been sufficient compliance with the statutory requirement, and with the ICC regulations on the subject (Ex parte No. 2170, Fed.Reg.Doc. 71–3788, filed 3–17–71).

The state and regional agencies involved have had ample notice of the precise trains proposed to be operated by Amtrak, and could formulate their plans accordingly. Compare State of Montana v. United States, 202 F.Supp. 660 (D. Mont.1962). Moreover, requests for additional service under § 403 of the Act can be made at any time.

■ Respondents' principal objection to the notices is the assertion that it was necessary for the Debtor to wait until after the Amtrak contract was executed before posting the notices; or, to put it another way, the assertion that the discontinuances could not validly be made effective until at least 30 days after the

---

2. Note the contrast between the "give notice" language of § 401(a) (1) and the "under the procedures" language of § 404 (b).

contract was signed. In my opinion, this argument is without merit.

Section 401(a) (1) of the Amtrak Statute provides that "upon its entering into a valid contract * * * the railroad shall be relieved of all its responsibilities as a common carrier of passengers by rail in intercity rail passenger service." If Congress had intended the result urged by these Respondents, the Statute would have provided that upon entry into such contract the contracting carrier would be free to give notice of discontinuance, or employed similar language. No valid legislative purpose would be served by requiring unnecessary intercity trains which are not the subject of requests by state or regional agencies for continuation, to be run for the additional 30-day period. As noted above, such requests by state, local and regional agencies can be made at any time (and could have been made during the notice period) ; and these bodies have received timely notice in advance of the proposed discontinuance. Of even greater significance, however, are the provisions of § 401(c) :

"No railroad or any other person may, without the consent of the Corporation, conduct intercity rail passenger service over any route over which the corporation is performing scheduled intercity rail passenger service pursuant to a contract under this section."

Thus, if Respondents' interpretation were adopted, the Debtor, by delaying posting the notices until signing of the Amtrak contract, would be obligating itself to operate trains thereafter in direct violation of the Act itself.

The procedure followed by the Debtor in this instance is in conformity with the March 17, 1971 regulations of the ICC (Ex parte 217, *supra*). Significantly, in adopting this notice regulation, the Commission found " * * * that the Commission has no jursidiction or reviewability over said notices, and that the said notices may be effective as early as May 1, 1971 * * *."

I conclude that the Respondents have not asserted any valid objection to the notice procedures.

In considering the jurisdictional issues now before the Court, it is necessary to bear in mind the distinctions set forth in the Amtrak Statute between the "basic system", "new service" supplied by Amtrak, and all other intercity passenger service. Section 202 provides:

"The basic system as designated by the Secretary shall become effective for the purposes of this Act upon the date that the final report of the Secretary is submitted to Congress and *shall not be reviewable in any court.*"

Section 403 authorizes the corporation to provide additional intercity rail passenger service "in excess of that prescribed for the basic system, either within or outside the basic system * * *", and decrees that any such additional service which is provided by the Corporation for a continuous period of two years "shall be designated by the Secretary as a part of the basic system." Section 404(b) requires the Corporation to continue all service included in the basic system until July 1, 1973; thereafter, discontinuances may be effected "under the procedures of section 13a of the Interstate Commerce Act." Service other than that in the basic system may be discontinued by Amtrak at any time.

It is thus reasonably clear that neither the Commission nor a court would have jurisdiction to review the basic system. Presumably, this would include the designation of specific trains within the basic system, although this is perhaps less clear. Whether the Commission or a court would have jurisdiction to review a determination by the Corporation that "new service" trains are intercity is difficult to discern from the statutory language. It may be that the draftsmen of this legislation paid scant attention to this precise question, on the assumption that litigation under the Statute would be more likely to involve service that was being discon-

tinued, rather than concern about who would be rendering the service.

The respondents, however, take the position that it does make a substantial difference to them whether the 600 series of trains between Philadelphia and Harrisburg, and the 200 series of trains between Philadelphia and New York, all of which are included in the Amtrak contract, are to be operated as intercity trains by Amtrak, or as commuter trains by the Debtor. If the former, as now contemplated, these trains could theoretically be discontinued at any time, since they were added after the basic system was established.

This much, at least, is certain: It is essential that uniform standards be applied in determining whether or not a given train is intercity. The Interstate Commerce Commission has already made such determinations in at least one case, *Penn Central Transportation Company discontinuance or change in service of 22 trains between Boston, Massachusetts and Providence, Rhode Island*, Finance Docket 26200 (decided February 10, 1971), a decision which attempts to flesh out the Statutory definition into practical guidelines for application in particular cases. Moreover, it is important that the standards which are to be applied for present purposes should be consistent with the standards applied in "avoidable loss" determinations under Section 401 (a) (3) of the Statute, a matter which is expressly within the jurisdiction of the Commission in the event of dispute.[3] And, finally, categorization of train service in this context is obviously a matter within the expertise of the Commission.

■■■ Accordingly, the parties have indicated that they would have no objection if the Court should refer these issues to the Commission for initial study and determination. 28 U.S.C. § 1336(b) clearly contemplates such references.

And cf. Illinois Commerce Commission v. Chicago & Eastern Illinois R. R. Co., 400 U.S. 987, 91 S.Ct. 449, 27 L.Ed.2d 434 (1971). As stated by the Supreme Court in United States v. Western Pacific Railroad (1956) 352 U.S. 59 at pp. 63–64, 77 S.Ct. 161 at p. 165, 1 L.Ed.2d 126:

"The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. 'Exhaustion' applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. 'Primary jurisdiction,' on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views. General American Tank Car Corp. v. El Dorado Terminal Co., 308 U.S. 422, 433, 60 S.Ct. 325, 331, 84 L.Ed. 361."

The Court has been advised informally that the Commission would be willing to undertake such a reference. Under these circumstances, it is unnecessary to decide the precise basis for referral.

The remaining question is whether a deadline should be fixed for the Commission's initial determination. With respect to the trains which will be operated under the Amtrak contract in any event, namely, the 600 series between Philadelphia and Harrisburg and the 200 series between Philadelphia and New York, there is no immediate urgency. The same is true with respect to trains Nos.

---

3. By order entered April 5, 1971, ex parte No. 268, the Commission has instituted a rule-making procedure under 49 C.F.R. Chapter X with respect to such determinations. Unfortunately, that proceeding, although timely for its own purposes, is not likely to be concluded within the time during which decision of the present issues must be made.

22, 23, 176 and 177 in New Jersey, as to which the objecting parties are apparently satisfied with the Amtrak arrangements on an interim basis. However, with respect to the New York City to Chatham, New York trains, and the bus service between York, Pennsylvania, and Lancaster, Pennsylvania, it would be desirable to have a prompt determination made; the Debtor will be required to operate some of these lines at a loss in the interim. With respect to the Amtrak trains in question, the Debtor will be required to resume their operation in the (unlikely) event of discontinuance of Amtrak, pending the initial determination by the Commission.